[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case is a companion to Donahue and Ralph v. SalisburyZoning Board of Appeals, No. CV 98 0077682S. By Memorandum of Decision, the court has dismissed that appeal.
After the ZBA ruled in favor of Mrs. Maliszewski the ruling which is the subject of the Donahue appeal, Mr. Ralph and Ms. Donahue filed with the ZBA an application seeking a variance of Zoning Regulations Section 423.2a to allow them to place a removable dock at the end of their right-of-way but less than ten feet from Mrs. Maliszewskis boundary line with the Virbila lot. As part of their application they stated the exceptional difficulties and unusual hardship occasioning their application as follows:
 The right of way on which the dock is located is only 16 feet wide. The well-worn path leading to the dock is approximately 5 feet from the boundary line of both the right of way and the property on which the right of way is located. (There is a hedgerow and stone wall marking the property line and concealing the walkway and dock from the abutting lot.) At a distance of approximately 6 feet from the line, there is a clump of trees which includes a hemlock having a diameter of approximately nine inches, another hemlock with a diameter of approximately 7 inches and a maple tree having a diameter of approximately 7 inches, or more. These trees are growing out of a raised area of what appears to be a ledge. They obviously CT Page 5217 could not have been planted recently as sizable trees, but have been growing there for many years, starting as seedlings taking root between outcroppings of ledge. The roots of these trees all of which would have to be cut down in order to move the dock hold the soil of the bank al: the edge of the lake. In order to move the dock, not only would the trees have to be cut down, but the bank would also have to be cut away, which would in all likelihood require blasting out a piece of ledge. At that location, the bank is approximately three feet high, dropping steeply into the waters of the lake. In other words, moving the dock another three feet further from Mrs. Maliszewskis line would necessitate cutting down the trees, blasting out ledge, and cutting down the bank bordering the lake, actions that would present exceptional difficulties and unnecessary hardship. Furthermore, cutting the trees and destroying the bank would be contrary to Town policy and public policy aimed at protecting the waters of the lake, and would probably be opposed by the Conservation Commission, if not prohibited, since these actions would increase erosion and run-off into the lake. Finally, although this effect does not represent a hardship to the applicants, moving the dock would interfere with Mr. Virbila's use of his own on the premises, and cutting down the trees and moving the dock would place the dock squarely in the view of the Virbila house, well as opening up the view of that house and Mrs. Maliszewki's house to boaters on the lake and houses across the lake that now benefit from the screening provided by the grove of trees.
 The hardship results from the particular configuration of the land beneath the right of way the bank and ledge that borders the lake from approximately 6 feet in from the property line to beyond the boundary of the right of way that is unique to that particular right of way area. Strict application of section 423.2a in this instance would present "practical difficulties and unnecessary hardships," constituting grounds for granting a variance. A variance of the 10-foot side yard requirement to permit leaving the dock in its present location (where it has been located for 75 to 80 years) would cause no detriment to the public welfare. The granting of the variance would not impair the integrity of the Salisbury zoning regulations, but would be consistent with and in harmony with the intent and purpose of the zoning regulations, which permit docks to be centered on lots with widths of less than 20 feet. (Record No. 1) CT Page 5218
The application was supported by a Statement by the applicants' lawyer (Record No. 2) and one by Ms. Virbila, the co-owner of the property over which the right-of-way passes (Record No. 3). Legal notice of the ZBA hearing on the application was duly published (Record No. 5), the hearing was held on September 15, 1998, as so noticed (Record No. 6); and following the public hearing and on that same night, the variance was granted (Record Nos. 13 and 14). It is from this ZBA decision that the Maliszewskis now appeal.
The jurisdiction of the Salisbury ZBA to grant variances from Salisbury Zoning Regulations is granted and limited by General Statutes § 8-6(3), which provides that the ZBA has the power and duty:
 (3) to determine and vary the application of the zoning bylaws, ordinances or regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, safety, convenience, welfare and property values solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such bylaws, ordinances or regulations would result in exceptional difficulty or unusual hardship so that substantial justice will be done and the public safety and welfare secured, provided that the zoning regulations may specify the extent to which uses shall not be permitted by variance in districts in which such uses are not otherwise allowed.
To support a variance, a hardship must arise from a condition different in kind from that generally affecting properties in the same zoning district and must be imposed by conditions outside the property owners control. Pike v. Zoning Board of Appeals,31 Conn. App. 270, 274 (1993), and cases therein cited. The applicant must show that because of some peculiar characteristic of his property, the strict application of the zoning regulation produces an unusual hardship, as opposed to the general impact which the regulation has on other properties in the zone. Reid v.Zoning Board of Appeals, 235 Conn. 850, 857 (1996). Variances may be granted if the variance is shown not to affect substantially the comprehensive zoning plan of the Town and if adherence to the strict letter of the zoning ordinance causes unusual hardship CT Page 5219 unnecessary to the carrying out of the general purpose of the zoning plan. Bloom v. Zoning Board of Appeals, 233 Conn. 198, 207
(1995).
The Plaintiffs claim that because Donahue only had a right-of-way over the lot owned by Virbila, and a right-of-way is not itself a "lot" within the definition of "lot" in the Zoning Regulations "Definitions" Section, Article II (the Regulations are in the Return of Record), the ZBA had no right to grant Donahue's application. They base this argument on Sec. 1104.1c of the Zoning Regulations, which empowers the ZBA "as authorized by the General Statutes as amended" to:
 c. Authorize upon in specific cases variances from the terms of these Regulations where by reason of unusual shape, size or topography of a LOT or other unusual condition of the BUILDING or land the owners of said property would be subjected to art unnecessary hardship as a result to the enforcement of the requirements of these Regulations.
The Plaintiffs claim that since the Virbilas own the "lot", they should have been the applicants or co-applicants, but were not. They did, however, submit a statement in support of the application, Record No. 3; and, indeed, state in that letter that they "have encouraged [Donahue and Ralph] to submit the application on their behalf and on our behalf to the Zoning Board of Appeals", emphasis supplied.
The Plaintiffs misread the Zoning Regulations. They do not limit variances only to a "lot" as defined in the Regulations. An alternative ground for variance is "other unusual condition of the BUILDING or land: (emphasis supplied). "Land" is not a defined term; but no one disputes that the 16-foot right-of-way is an encumbrance of "land" (as contrasted, for instance, to air rights or water rights). Indeed, "right of way" is itself a defined term in Article II, and is defined as "a strip of land". It is likewise beyond dispute that Donahue and Ralph have a property interest in that "strip of land" by virtue of the deed of property to them as reflected in subparagraph (4) of Schedule A of Record No. 10.
Thus, the very § 1104.1c invoked by plaintiffs on its face empowers the ZBA to consider a variance with the respect to the "land" constituting Donahue's "right-of-way". There is yet another reason that this result is so. As Section 100 of the CT Page 5220 Regulations recognizes, the Zoning Regulations were "adopted in accordance with, and for the purposes set forth in Chapter 124 of the Connecticut General Statutes". General Statutes § 8-6(3), quoted supra, is part of Chapter 124. It expressly permits variances as to "a parcel of land". "Parcel" is not defined either in Chapter 124 or the Zoning Regulations, but would include "a strip of land" (the definition of a right of way) or "land" (the term used in Regulation § 1104.1c. And if plaintiffs' intent is to claim that Section 1104.1c gives the ZBA a more limited scope than is granted by General Statutes § 8-6(3), they are meet with commandment of Farnsworth v. Windsor,150 Conn. 484, 487 (1963), dealing with a similar attempt to narrow by local law the jurisdiction of a ZBA:
 Any attempt to limit these powers and duties by restrictive regulation in conflict with the enactment of the General assembly exceeds the authority of the town. The regulations governing the powers and duties of the zoning board of appeals are not enforceable. Mabank Corporation v. Board of Zoning Appeals, 143 Conn. 132, 135, 120 A.2d 149; Shelton v. City of Shelton, 111 Conn. 433, 439, 150 A. 811; 5 McQuillin, Municipal Corporations (3d Ed. p. 97).
The plaintiffs next argue that because under Regulations § 423.2a a dock can only be erected as an accessory structure on the same lot as the principal building to which it is an accessory, Donahue — who did not own the lot over which the right of way passes or the principal building on that lot — cannot erect the dock at all.
The Plaintiffs, however, overlook two key facts. First, while the right of way is not itself a "lot", it is a 16-foot strip of land that is part of a lot owned by Virbila. And second, in Record No. 3, the co-owner of that lot and of the principal building on it, has acquiesced in indeed has joined in — the variance applications filed by Donahue and Ralph. The principal building on the Virbila lot — as the term "principal building" is defined in the Regulations — is the Virbila house. The Donahue dock, built on the portion of that same Virbila lot that constitutes the Donahues' right of way, is by virtue of the Virbilas' joinder in this application, a structure accessory to their home, as that term is defined in the Regulations — a structure "which is subordinate to and whose use is incidental and supplementary to the use of the PRINCIPAL BUILDING ON THE SAME LOT . . ." CT Page 5221
Contrary to plaintiffs' assertion, the ZBA's grant of the variance is in no way inconsistent with its decision in Donahue
requiring compliance with § 423.2's 10-feet setback requirement. Indeed, but for that 10-foot setback requirement, there would have been on need to vary it, which is the sole purpose of the application in this case. The issue in Donahue was whether the right of way was itself a "lot". If it had been, and since it was only 16 feet wide, it would qualify as a less-than-20-foot-wide lot under § 423.2 so as to exempt the dock from the 10-foot setback requirement. The ruling in Donahue was that because the right of way was not a "lot", the dock extending from it was not exempt from the 10-foot setback requirement. It was precisely to vary that 10-foot setback requirement that Ralph and Donahue — joined by Virbila — brought their variance application.
Plaintiffs do not appear to dispute the existence of the requisite undue hardship entitling Donahue and Ralph to their variance. In any event the hearing amply demonstrated the unique topographical problems peculiar to this property which would support the ZBA's finding of hardship sufficient to sustain their grant of the variance.
For all of the reasons set forth above, plaintiffs appeal from the decision of the ZBA is dismissed.
HON. WALTER M. PICKETT, JR. JUDGE TRIAL REFEREE