[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On June 27, 1997, the Defendant Charter Development Corporation filed two applications with the Defendant Clinton Planning and Zoning Commission, (Defendant Commission); (1) for a subdivision of property located off Settlor's Lane in Clinton for a total of twelve lots to be known as the Braewood Subdivision and (2) for a special exception for three of the subdivision lots as rear lots. A public hearing was held on the special exception application on August 25, 1997. On October 14, 1997, the commission approved both applications and the plaintiffs timely filed this appeal. For the reasons set forth in detail below, the court sustains the appeal.
 1. Jurisdiction
Appeals from a decision of a zoning commission may be taken to the Superior Court. Connecticut General Statutes § 8-8. "Appeals to court from administrative agencies exist only under statutory authority . . . A statutory right of appeal may be taken advantage of only by strict compliance provisions by which it is created. . . . Such provisions are mandatory, and if not is CT Page 4490 subject to dismissal. . . ." (internal citations omitted). Office ofConsumer Counsel v. Department of Public Utility Control,234 Conn. 624, 640, 662 A.2d 1251 (1995). The record of the Defendant Commission's proceedings and the court file reflect that notice of the decision of the Commission was duly published in the ClintonRecorder on October 21, 1997 and that the Plaintiffs filed the appeal within the time specified within the statute on November 13, 1997. The court further finds that the appeal was properly served as set forth in Connecticut General Statutes § 8-8 (b). The court finds that all statutory provisions concerning the taking of the appeal have been met.
 A. Aggrievement
Aggrievement is a jurisdictional prerequisite to maintaining any zoning appeal. Winchester Woods Associates v. Planning andZoning Commission, 219 Conn. 303, 307, 592 A.2d 953 (1991);DiBonaventura v. Zoning Board of Appeals, 24 Conn. App. 369, 373,588 A.2d 244 (1991). There are two types of aggrievement. First, an individual property owner is aggrieved by virtue of ownership of property within one hundred feet of the land subject to the decision of the Commission. Connecticut General Statutes § 8-8. Second, "(a)ggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . . . . . . has been adversely affected." (internal citations omitted). Connecticut Resources Recovery Agency v.Planning Zoning Commission, 225 Conn. 731, 739 n. 12,626 A.2d 705 (1993).
The Plaintiffs presented testimony concerning aggrievement at the trial of the matter. The court finds that the Plaintiff Suzanne Smith, an abutting landowner, is statutorily aggrieved by virtue of the location of her property within one hundred feet of the subject property. The Plaintiff William Comeau owns property one hundred and ten feet from the proposed subdivision. Nonetheless, the court does find from the testimony and the record concerning the increased traffic burden[1] that he is also an aggrieved party.
 B. Notice
The Plaintiffs also challenge the adequacy of the notice of public hearing for the special exception, claiming that the abbreviation "S.E." in the published notice was inadequate to put the public on notice that this would be a hearing concerning a CT Page 4491 special exception. They argue that the notice does not spell out the exact nature of the application, is fatally defective and does not provide the notice contemplated by the statutes. The Defendant Commission counters by stating that even without the abbreviation in the public notice, the notice is adequate and more is not required pursuant to the zoning statutes. The Defendant Commission makes the crucial distinction that, while lack of notice is a jurisdictional defect, the adequacy of the content of the notice does not reach jurisdictional dimensions. The published notice in question was as follows:
 "S.E. 97-266 Braewood Subdivision — 10 Settlors La-Charter Development Corp: Creation of 3 rear lots. Map 67, Block 58, Lot 7A, Zone R-20."
Publication of notice is mandatory for a commission to have jurisdiction over an application which requires a public hearing, such as an application for a special exception. See Connecticut General Statutes § 8-2 and Koepke v. Zoning Board of Appeals,223 Conn. 171, 610 A.2d 171 (1992), Schwartz v. Town of Hamden,168 Conn. 8, 15, 357 A.2d 480 (1975). As to the content of the notice, our Supreme Court in Passero v. Zoning Commission,155 Conn. 511, 514, 235 A.2d 660 (1972), held that "(t)he purpose of the notice required by this statute is to fairly and sufficiently apprise those who may be affected by the proposed action of the nature and the character of the proposed action so as to intelligently enable them to prepare for the hearing."
While it is true that this notice and many other notices could perhaps be more artfully drafted, the court finds the notice in question does indicate the nature and character of the proposed action: action concerning three rear lots in the Braewood subdivision. The court holds that the content of the legal notice was adequate for purposes of notice to the public.
 2. Receipt of Evidence after Close of Public Hearing
The Plaintiffs' next challenge the special exception application granted by the Defendant Commission, claiming that the Defendant Commission received additional evidence from the engineer for the Defendant Charter Development Corp. after the close of the public hearing on August 25, 1997. In Norooz v.Inland Wetlands Agency, 26 Conn. App. 564, 569, 602 A.2d 613, (1992), the court stated:
CT Page 4492 "Our law clearly prohibits the use of information by a municipal agency that has been supplied to it on an ex parte basis. . . . . . . Due process of law requires that the parties involved have an opportunity to know the facts on which the (agency) is asked to act, to cross-examine witnesses and to offer rebuttal evidence."
Nonetheless, the court found that there were a number of cases which have approved the consideration of information by a local administrative agency supplied to it by its own technical or professional experts outside the confines of the administrative hearing. See e.g. Spero v. Zoning Board ofAppeals, 217 Conn. 435, 44, 586 A.2d 590 (1991), Kyser v. ZoningBoard of Appeals, 155 Conn. 236, 249-251, 230 A.2d 595 (1967,Yurdin v. Town Plan and Zoning Commission., 145 Conn. 416,143 A.2d 639, cert. denied 358 U.S. 894 (1958). The Norooz court held that "(t)he proper inquiry for a reviewing court, when confronted with an administrative agency's reliance on non-record information provided by its technical or professional experts, is the determination of whether the challenged material includes or is based on any fact or evidence that was not previously presented at the public hearing in the matter." Id., pps. 573-574.
After the close of the public hearing in August, 1997, the Defendant Commission at its next regularly scheduled meeting in September had both the special exception application and the subdivision application on its agenda. The subdivision application did not require a public hearing and none was held. The minutes of the regular meeting of September 8, 1997 indicate the discussion that evening included the special exception agenda item.[2] The Defendant Commission itself made attempts to differentiate the two applications that evening and pointed out after the commencement of the engineer's remarks that this was a further consideration of the subdivision application[3].
The court concludes, from the record, that the Defendant Commission did receive further information from the Defendant Charter Development Corps engineer. However, the court finds that the alleged additional evidence received related to the subdivision application and not the special exception application. The receipt of information on an application where no public hearing is required does not call into question the due process issues raised by the Plaintiffs. The court therefore holds that the procedure followed by the Defendant Commission was CT Page 4493 legally permissible.
 3. Interpretation of Subdivision Street as Temporary Dead End Street
The third claim advanced by the Plaintiffs is that acceptance of the subdivision as proposed creates a permanent dead end road with more than twenty homes and exceeds one thousand feet in length. Both parties concede that there are a total of twenty-four lots and that the street in question is longer than one thousand feet. The issue thus is whether or not Settlor's Lane is a permanent dead end street.[4] As both parties have correctly stated, a planning commission acts in an administrative capacity when considering a special exception application or a subdivision application. As a general rule, the courts have held that a commission "has no discretion or choice but to approve a subdivision if it conforms to the regulations adopted for its guidance." Reed v. Planning and Zoning Commission, 208 Conn. 431,433, 544 A.2d 1213 (1988). Nonetheless, there are often circumstances in which the commission must decide which regulations and in what manner they may apply to any application before it. In such cases, a commission may be required to exercise its legal discretion. See e.g. Irwin v. Planning andZoning Commission, 244 Conn. 619, 711 A.2d 675 (1998). In such matters, the court's review of the commission's decision is narrow.
 "It is well settled that courts are not to substitute their judgment for that of the board, and that decisions of local boards will not be disturbed as long as an honest judgment has been reasonably and fairly made after a full hearing. . . . The court's function is to determine on the basis of the record whether substantial evidence has been presented to the board to support its findings." (citations omitted; internal quotations marks omitted), Conetta v. Zoning Board of Appeal, 42 Conn. App. 133, 137-138, 677 A.2d 987 (1996).
The plaintiffs argue that there is only one exception set forth in the regulation; for the length of the road and not the number of lots located on that road. They also challenge the temporary nature of the road. While the plaintiffs interpretation is not inconsistent with the regulations, it is equally reasonable to consider that a longer road might necessitate more building lots by virtue of its length. The court notes that the Defendant Commission considered these issues and stated "(p)ermanent dead end roads are created if there is no CT Page 4494 neighboring viable building land. The applicant then indicated that the road could in the future be extended to Liberty Street, eliminating the dead end."[5] The court finds, from the record, that the Defendant Commissions interpretation of its regulations as they apply to this subdivision application is reasonable. The court will not disturb the Defendant Commission's judgment in this regard.
 4. The Inland Wetlands Report
The Plaintiffs' remaining challenge to the subdivision and special exception application approval is that the Defendant Commission never received a report from the Clinton inland wetlands agency, as is required pursuant to Connecticut General Statutes § 8-3c (a) concerning special exceptions and § 8-26, concerning subdivisions. There is no dispute that the Braewood subdivision contains inland wetlands and that wetlands are located on the three rear lots[6], the subject of the special exception application. The record also discloses a wetlands crossing by a planned road in the subdivision. There is also no dispute that both sections of the statutes mandate that a report from the inland wetlands agency be received and given due consideration by the Defendant Commission prior to taking any action on the applications.[7]
In support of their position, the Plaintiffs rely on the return of record and a comment made by the Zoning Enforcement Officer at the public hearing that there would be no decision from the inland wetlands agency until September. The record reveals that at the regularly scheduled meeting of the Defendant Commission on July 14, 1996, the Zoning Enforcement Officer "advised that there are wetlands concerns which might require modifications to the present plans. The IWCC[8] does not meet again until September."[9]
The next reference to inland wetlands concerns is reflected in the minutes of the Defendant Commissions meeting of August 11, 1997, when after an inquiry by William Comeau, the Zoning Enforcement Officer "advised that it has not come before them yet as they are not meeting until September. They will be made aware of the new plan . . . The ZEG advised that she will be advising the IWCC that the only change to the original application is in the configuration of Lot 2. (Commission Member) Barrows advised that the P Z cannot act on the application until the IWCC makes a decision."[10] The last direct reference to the inland CT Page 4495 wetlands report is in the corrected minutes of the regularly scheduled meeting of the commission of September 10, 1997 when Commission member Barrows "advised that the P Z cannot act on this application until the IWCC makes a decision and advises the P Z in writing."[11] The only other reference which could be construed to refer to this matter occurred in the minutes of the meeting of the Defendant Commission on October 10, 1997, where it was reported that "(t)here were no outstanding issues regarding this application."[12] The record fails to disclose a subsequent report or decision of the IWCC or any mention of its consideration by the Defendant Commission.
The Defendant Commission counters this claim by stating that a report from the IWCC was received prior to the public hearing on the special exception application. The documentation for this claim is contained, not in the record, but in additional documents appended to the Defendant Commission's trial brief of May 1, 1998. The items include a legal notice of the decision of the IWCC of April 1, 1997, approving with conditions a previous application for the proposed 12 lot Braewood subdivision. It also includes a June 1997 report of the Zoning Enforcement Officer, indicating that no new material had been submitted to the IWCC after an appeal concerning the subdivision had been filed, the earlier applications withdrawn and the present applications filed. The Defendant Commission maintains that the decision of the IWCC was considered by it and that some changes in the plans may require further consideration.[13] Further, it claims that it was sufficient that the Defendant Charter Development Corp. had the inland wetlands permits in hand. It argues that it is not required that the application and the permitting process proceed together at the same time.
Unfortunately for the Defendants, the statutes mandate that applications for inland wetlands permits be filed with the appropriate agency prior to or at least on the same day as the applications are filed with the Defendant Commission. The record reveals that the filing date of the new and revised applications was June 27, 1997. At that time, the Zoning Enforcement Officer reported that no new applications had been filed with the IWCC. Further, the record fails to disclose either a report or decision made by the IWCC or its due consideration by the Defendant Commission, as required by the statutes.
The Defendants' arguments might be persuasive if the applications which the Defendant Commission approved were the CT Page 4496 same applications for which the inland wetlands permit had been granted. When the legislation concerning submission of the application to the inland wetlands agency was enacted, it was enacted in part:
 "to keep a developer from . . . dangling in the winds between a wetlands agency and a planning commission. . . . This way the applicant would not, as some have, go all through the subdivision procedure, get his approval and then find he could not get a building permit because he failed to get approval from the wetland agency." Amway v. Bloom, 29 Conn. App. 469, 476, 477, 615 A.2d 1075 (1977), quoting Rep. Janet Polinsky.
Where, however, applicants proposed alternative plans which were never submitted to an inland wetlands agency, our Superior Courts have held that approval of such application by a planning and zoning commission would be a violation of Connecticut General Statutes § 8-3c (a) and § 8-26. See Michel v. Bethany Planningand Zoning Commission, Superior Court, judicial district of New Haven at New Haven, Docket No. 0378419, 1996 Ct. Sup. 4095-Z (May 31, 1992); County Wide Home Improvement and Maintenance Co., Inc.v. Planning and Zoning Commission, Superior Court, judicial district of Hartford/New Britain at New Britain, Docket No. 447452, 8 Conn. Super. Ct Rpts. 379 (March 18, 1993); Greene v.Ridgefield Planning and Zoning Commission, Superior Court, judicial district of Hartford/New Britain at New Britain, Docket No. 442131, 8 Conn. L. Rptr. 137 (January 6, 1993). While the court can glean from the record that there was only a minor change in the new applications of June 27, 1997 as they related to wetlands concerns and that the Defendant Commission may well have treated the report of IWCC as the required report, such an ad hoc procedure does not comply with the statutory requirements and the court cannot sanction it. As was stated in Edelson v. PlanningCommission, Superior Court, judicial district of Hartford/New Britain at New Britain, Docket No. 455273S, 1994 Ct. Sup. 9479, 9487 (September 16, 1994):
"The referral statutes require that a copy of the application filed with the planning and/or zoning commission be filed with the wetlands commission. Notwithstanding the earlier review, it is certainly not uncommon from an applicant to change its proposal many times during the administrative process. Indeed, the informal review process usually results in changes to a proposal. The statutory referral section thus CT Page 4497 requires a copy of the current application to be filed — not something filed or reviewed months before." (Emphasis added).
The court, in accordance with this analysis, concludes that the action of the Defendant Commission in approving both the Braewood subdivision and special exception applications did not comply with the statutory referral requirements of Connecticut General Statutes § 8-3 and § 8-26. By acting without such referral and report from the inland wetlands agency, the Defendant Commission acted illegally, arbitrarily and in excess of the authority vested in it. For the foregoing reasons, the Plaintiffs' appeal is sustained and the approval of the Braewood subdivision and special exception applications by the Defendant Planning and Zoning Commission of the Town of Clinton declared null and void.
Barbara M. Quinn, Judge